IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NADINE L.,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | )    No. 24 C 5171 |
| v. | ) |
| | )    Magistrate Judge Gabriel A. Fuentes |
| LEE DUDEK, | ) |
| Acting Commissioner of Social Security,[2] | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**[3]

Before the Court is Plaintiff Nadine L.'s memorandum to reverse and remand the Administrative Law Judge's ("ALJ") decision denying her application for disability insurance benefits ("DIB") (D.E. 16) and Defendant's motion asking the Court to affirm. (D.E. 22).

**I.    Procedural History**

Plaintiff applied for benefits in March 2014, alleging a disability onset date of February 1, 2011, which was later amended to January 17, 2013. (R. 1983.) The first ALJ opinion in this case, dated December 12, 2016, ended in a 2021 remand by the U.S. District Court. (R. 1338-62). The second ALJ opinion (written by a different ALJ) was dated June 29, 2022; on March 8, 2023, the Commissioner agreed to a voluntary remand after Plaintiff's appeal to federal court. (R. 2077.)

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Acting Commissioner of Social Security, Lee Dudek, for his immediate predecessor, Michelle A. King, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On July 12, 2024, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 6.)

Plaintiff's application was then sent to a third ALJ, who held a hearing on February 8, 2024, and issued a written decision denying Plaintiff's application on March 7, 2024, finding she was not disabled within the meaning of the Social Security Act (the "Act") from January 17, 2013, through the date last insured ("DLI") of September 30, 2016.[4] (R. 1983-84.)[5] This appeal followed.

## II.     The ALJ Decision[6]

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims for the relevant period, January 17, 2013, through the DLI. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity during the relevant period. (R. 1985.) At Step Two, the ALJ determined that Plaintiff had multiple severe physical impairments as well as severe anxiety disorder, mood disorder characterized as bipolar I disorder, major depressive disorder, and attention deficit hyperactivity disorder (substance-induced). (R. 1986.) At Step Three, the ALJ found that Plaintiff's impairments alone or in combination did not meet or medically equal a Listing, finding that in the paragraph B functional areas, Plaintiff had mild limitation in understanding, remembering or applying information and in adapting or managing oneself, and moderate limitation in interacting with others and concentrating, persisting or maintaining pace. (R. 1987-88.) The ALJ assigned Plaintiff a residual functional capacity ("RFC") to perform light work with additional postural, handling, fingering, and environmental limitations, and the following mental limitations:

---

[4] To be entitled to DIB, a claimant must prove that their disability onset date preceded the DLI. *See Martin v. Kijakazi*, 88 F.4th 726, 728 (7th Cir. 2023), citing 42 U.S.C. § 423(c).

[5] Plaintiff did not file written exceptions with the Appeals Council ("AC") and the AC did not review Plaintiff's case on its own within 60 days after the ALJ's March 7, 2024, decision, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(c), (d).

[6] Plaintiff's arguments are limited to the ALJ's assessment of her mental impairments, and the Court's discussion likewise focuses on those issues.

> perform simple and detailed, but not complex tasks in work involving simple work-related decisions. The claimant can have no more than occasional changes in the work setting. In addition, the clamant is limited to work involving only end of the day or end of half-day production quotas with no fast-paced production requirements, such as assembly line work. The claimant's work could be in proximity to other coworkers with no more than occasional interaction and with no tandem tasks. The claimant is limited to occasional interactions with supervisors. The claimant can engage in no work where interaction with the general public is part of the job duties.

(R. 1989-90.) At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work, but at Step Five, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could have performed, and thus, that Plaintiff was not disabled under the Act from January 17, 2013, through September 30, 2016 ("the relevant period"). (R. 2000-02.)

### III. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054; *see also Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) (reiterating that Seventh Circuit "review proceeds with a light touch – not holding ALJs to an overly demanding evidentiary standard and in turn reinforcing that claimants bear the affirmative burden of proving their disability"). The Seventh Circuit has clarified that

3

district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

**IV.  The ALJ's Assessment of Plaintiff's Mental Impairments Was Supported By Substantial Evidence, Both at Step Three and Throughout the ALJ's Opinion.**

Plaintiff argues that the ALJ's assessment of the paragraph B criteria to determine whether her mental impairments met or equaled a listing at Step Three was not supported by substantial evidence because the ALJ erred in rejecting the opinions of her treating mental health therapists, Michelle Dubil, LSW, and Brian Trager, and did not adequately address the opinions of testifying mental health experts, Ellen Rozenfeld, Psy.D., (August 15, 2016, hearing) and James Wargel, Ph.D. (May 3, 2022, hearing). (D.E. 16: Pl. Mem. at 8-9.)[7]

**A.  Step Three**

Plaintiff's contention that the ALJ's Step Three findings "exclude the opinions of Mr. Trager and Ms. Dubil, [as well as] Dr. Wargel's opinion, and don't cite to any objective medical evidence of record," is inaccurate. (*Id*. at 11.) As the Court details in the next section, the ALJ

---

[7] Plaintiff also argues that the ALJ's treatment of the opinions of Drs. Rozenfeld and Wargel violated the AC's August 2023 remand order, but this argument is without merit. In that order, the AC found that the second ALJ opinion did not adequately evaluate the opinions of Drs. Rozenfeld and Wargel because they opined, respectively, that Plaintiff would be limited to incidental public contact and occasional interaction with supervisors, but the ALJ "neither adopted these limitations nor explained why they were not adopted." (R. 2082-83.) By contrast, the third ALJ opinion, at issue here, limited Plaintiff's RFC to occasional interactions with supervisors and no work where interaction with the general public is part of the job duties, meaning that the AC's admonition in the 2023 order does not apply.

4

cited abundant medical evidence, including Dubil's and Trager's own treatment notes, in explaining his Step Three determination that Plaintiff had only mild limitation in understanding, remembering or applying information and in adapting or managing oneself, and moderate limitation in interacting with others and concentrating, persisting or maintaining pace. (*See* R. 1987-89, citing 3F; 6F; 7F; 8F/64- 65; 10F/3-5; 10F/18-20; 11F; 14F; 15F; 16F/1-30; 18F/10-11, 15, 26-27; 20F; 21F; 23F/8, 11; 24F; 25F/7-8, 21-24; 34F/1-11, 25-26; 17E.) Moreover, the ALJ's discussion of the medical opinions in greater detail later in the opinion (*see* R. 1995-99) also supports the ALJ's Step Three determination that Plaintiff's impairments did not meet or equal a mental health listing as the Court considers the ALJ's decision "holistically" and "in its entirety," *Thorlton*, 127 F.4th at 1082, and "[a]n ALJ need not rehash every detail each time he states conclusions on various subjects." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021).

### B. Medical Opinion Evidence

In determining the persuasiveness of medical opinion evidence, the most important factors for the ALJ to consider are "the internal supportability of a physician's medical opinion" and "whether a medical opinion is consistent with the record as a whole." *Bakke v. Kijakazi*, 62 F.4th 1061, 1067-68 (7th Cir. 2023), citing 20 C.F.R. § 404.1520c(b)(2), (c)(1)-(2). For the reasons that follow, the Court finds that the ALJ's assessment of the medical opinion evidence was supported by substantial evidence.

#### 1. Therapist Dubil

Dubil, who began treating Plaintiff on February 7, 2014, submitted three opinions on Plaintiff's limitations: (1) a letter dated April 28, 2014 (R. 662-65); (2) a third-party function report dated May 27, 2014 (R. 371-82, duplicated at R. 383-94); and (3) a letter dated September 23, 2014, which is an exact duplicate of the April 28 letter (R. 1076-79). The ALJ noted that Dubil

opined that Plaintiff had anxiety, depression, irritability, impulsivity, and social impairments that limited Plaintiff's concentration to 10-minute periods, kept her from tolerating stress and changes to routine, and made it hard for her interact with other people, thus impairing her ability to hold a steady job. (R. 1996.) The ALJ gave Dubil's opinions "no weight" for the following reasons:

- Her opinions were largely "vocational in nature and outside the scope of her expertise."

- Dubil "failed to reconcile her assessment of the claimant's social functioning with documented exams and treatment notes where the claimant presented appropriately with a cooperative demeanor and as an active and willing participant during therapy sessions."

- "While she alluded to the claimant's 'impulsivity and irritability' as a barrier to holding a steady job, Ms. Dubil cited one example where the claimant reacted intensely. However, as observed by medical expert, Dr. Wargel, this incident was brief, and the claimant responded well and quickly to intervention."

- The ALJ further questioned Dubil's credibility because she "also opined with regard to limits attributed to the claimant's physical health impairments, despite no indication from the records that she possesses any medical expertise or access to the claimant's physical health treatment history. Thus, Ms. Dubil lacks the necessary medical knowledge or qualification to accurately assess the claimant in such a manner. Furthermore, the record showed that her physical functioning was far more intact than described."

(*Id*.)

Plaintiff contends that the ALJ's focus on Dubil's lack of vocational expertise and Plaintiff's cooperative attitude during treatment ignores evidence of Plaintiff's irritability in treatment sessions and "cherry-picks the record to reach the conclusion he seeks." (Pl. Mem. at 12.) The Court disagrees. The ALJ has a basis in the record for discounting Dubil's conclusion that Plaintiff's mental illness "would greatly impair her ability to do substantive work," and "make it practically impossible for her to hold a steady job" (R. 1996, citing Ms. Dubil's letter at R. 664), and those are opinions on ultimate issues reserved for the Commissioner. *See Albert v. Kijakazi*, 34 F.4th 611, 616 (7th Cir. 2022) ("statements about whether an individual can or cannot work constitute evidence that 'is inherently neither valuable nor persuasive'" because "the ultimate

6

determination of disability is reserved for the Commissioner"), quoting 20 C.F.R. § 416.920b(c)(3).

In addition, the ALJ did not ignore evidence in determining that Dubil's opinion was unsupported by her own treatment notes and other documented exams. Rather, the ALJ determined that Plaintiff "responded well and quickly to intervention" to address her impulsivity and irritability. Earlier in the opinion, the ALJ acknowledged that at appointments from February 2013 to November 2014, Plaintiff was occasionally irritable or exhibited poor impulse control and minimal insight, but the ALJ noted that Plaintiff nevertheless frequently exhibited not just cooperativeness, but also appropriate mood, affect, orientation, and attention; good motivation and tolerance for frustration; and intact judgment and thought processes. (R. 1993-94.) The ALJ next reviewed evidence from November 2014 through January 2015 that indicated Plaintiff exhibited increased irritability and agitation as well as depression, leading her treating providers to adjust her mental health medications. (R. 1994.) By February 2015, the ALJ noted that Plaintiff's symptoms "had improved with her medication changes," and her mood and affect continued to show improvement through January 2016, showing fair insight and judgment and ability to concentrate. (R. 1994-95.) Accordingly, the ALJ supported his decision with substantial evidence.

### 2. Therapist Trager

Trager filled out a report on Plaintiff on May 18, 2016; he had been treating Plaintiff weekly since December 4, 2015. (R. 1154.) The ALJ gave "little weight" to this opinion that Plaintiff was markedly restricted in daily activities, socialization, and the ability to sustain concentration and attention. (R. 1197.) The ALJ determined that Trager's opinion that Plaintiff had marked limitations was inconsistent with the opinions of medical experts, Drs. Rozenfeld and Wargel, and inconsistent with and unsupported by evidence in the record, including that:

7

- Plaintiff "exhibited periods of intact concentration during treatment sessions;"

- Her "thought processes were regularly logical and goal directed;"

- During the consultative examination, Plaintiff "did not show excessive distractibility," and her memory was intact;

- Plaintiff "was capable of being cooperative with both her treatment providers and Agency consultative examiners;" and

- "[T]here are several references in the record that reflect the claimant was able to independently tend to various daily activities."

(*Id*.) Plaintiff repeats the argument, rejected by the Court above, that the ALJ relied on Plaintiff's cooperation during treatment to the extent of ignoring evidence that Plaintiff was irritable and impulsive at sessions. Plaintiff also contends that her daily activities "are plainly inadequate" to support the ALJ's conclusions and that the ALJ "does not explain" why Trager's opinion was inconsistent with the opinions of Drs. Rozenfeld and Wargel. (Pl. Mem. at 11-12.)

The Court respectfully disagrees. The ALJ's consideration of Plaintiff's daily activities in assessing that Plaintiff was more functional than Trager or Dubil opined was appropriate; "[i]n fact, agency regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities." *Crowell v. Kijakazi*, 72 F.4th 810, 818 (7th Cir. 2023) (internal citations and quotations omitted). Here, the ALJ supported his determination that Plaintiff's daily activities showed she was mentally and socially more capable than she alleged, and more than Trager or Dubil opined, as follows:

> [T]he claimant was capable of more social interaction than alleged. The claimant was able to engage in romantic relationships. She could cohabitate with significant other and her daughters. The claimant could complete tasks that required going out in public such as shopping in brick-and-mortar stores and driving. Finally, the claimant displayed adequate social functioning during the hearing. . . . Furthermore, the claimant was able to engage in activities that required functional concentration and task persistence. The claimant watched television and played cards for entertainment. The claimant could drive. The claimant was able to complete household tasks such as preparing meals, cleaning, and doing laundry. The claimant

8

could shop for necessary items. The claimant was able to help care for family pets. Finally, the claimant did not require significant redirection during the hearing.

(R. 1988, 1999-2000.) Contrary to Plaintiff's argument, this analysis provided additional support to the ALJ's determination to reject the opinions of Dubil and Trager, which was supported by substantial evidence.

### 3. Drs. Rozenfeld and Wargel

Plaintiff does not argue that the ALJ erred in giving great weight to the expert testimony of Drs. Rozenfeld and Wargel but instead argues that the ALJ failed to explain why Trager's opinion was inconsistent with their testimony. (Pl. Mem. at 12.) Contrary to Plaintiff's argument, the ALJ's determination that Trager's opinion was inconsistent with their testimony did not need additional explanation: Trager opined that Plaintiff was so limited that she could not perform any work, while Drs. Rozenfeld and Wargel opined that Plaintiff could work with accommodations for her mental impairments. The ALJ explained in detail why, unlike Trager's opinion, he found their opinions were consistent with the record (*see* R. 1995-96), and the ALJ explained why he adopted Dr. Rozenfeld's limitations on interacting with others and Dr. Wargel's limitations on concentrating, persisting or maintaining pace; understanding, remembering or applying information; and adapting or managing oneself. The ALJ adequately explained the reasons for his decision under the substantial evidence standard and the Seventh Circuit's minimal articulation requirements.

**IV. The ALJ's Step Five Error Was Harmless Because the Determination that There Exist Substantial Numbers of Jobs in the National Economy that Plaintiff Can Perform Was Supported By Substantial Evidence.**

Plaintiff argues that one of the three jobs the ALJ determined Plaintiff could perform based on the vocational expert's ("VE") testimony at the February 2024 hearing does not exist in the Dictionary of Occupational Titles ("DOT"). (Pl. Mem. at 13-14.) A simple search confirms

9

Plaintiff's argument that "General Production Worker, DOT # 659.685-020," does not exist. Defendant argues that this error was harmless because even removing the General Production Worker from the Step Five, a substantial number of jobs remain available under the Inspector and Hand Packer positions. (D.E. 23: Def. Mem. at 13-14.)

The ALJ adopted the VE's testimony that given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform the following representative occupations (which the VE referred to as "occupational industries") (R. 2031):

> Inspector, DOT # 529.687-114 (SVP-2, unskilled, light, approximately 122,000 jobs in the national economy);
>
> General Production Worker, DOT # 659.685-020 (SVP-2, unskilled, light, approximately 150,000 jobs in the national economy); and
>
> Hand Packer, DOT # 920.687-026 (SVP-1, unskilled, light, approximately 200,000 jobs in the national economy).

(R. 2001-02.) The ALJ concluded that although "the DOT does not necessarily differentiate between levels of climbing, levels of interpersonal interaction, or end of day production quotas," the ALJ determined that the VE's testimony was "consistent with the information" in the DOT because the VE "elucidate[d] that "her opinion was based on combination of [her] work experience including jobs assessment and placement experience and supplemental materials such as the Specific Occupation Selector Manual. The [VE] testified that she had placed people in similar jobs. The [VE] confirmed that the listed jobs had end of day or end of half-day production quotas." (R. 2002.) The ALJ further noted that Plaintiff's counsel did not object to the VE's testimony. (*Id.*)

At the hearing, after the VE stated that her testimony was consistent with the DOT, the ALJ noted that "the DOT doesn't necessarily parse out the mode or method of climbing, it also does not talk about the level of interaction with others, . . . end of day or half-day production

10

quotas, no fast-paced production, things like that, and so what's the basis of your opinion on those factors?" (R. 2031.) The VE testified, as the ALJ stated, that:

> The basis of my opinion is a combination of my work experiences and my utilizing other resources, there are companion publications that go along with the DOT that will break down the physical demands and working conditions of each DOT code. I also have spent a long career in vocational rehabilitation as a counselor and an instructor and provided direct services to employers and my customers with disabilities and I did a lot of job analysis and job assessments to determine appropriate working conditions based on my customers' abilities and limitations. So, I have a significant amount of experience and along with that knowledge regarding various job titles and working conditions.

(*Id*.) The VE further explained that the basis for her answers is her "years of experience working in the job placement industry as a VR specialist," and that she "belong[s] to a VE community and . . . stay[s] updated on what the expectations are in terms of the VE community on workers' needs and employers' needs." (R. 2034.) She further testified that she has placed "a number of people" in the three manufacturing positions she listed, that they are not assembly line or fast-paced jobs, and that they would meet the RFC. (R. 2032.) Plaintiff counsel had "[n]o questions of the vocational expert." (R. 2034.)

The Commissioner "bears the burden at step five to show that there exist substantial numbers of jobs in the national economy that the claimant can actually do." *Schmitz v. Colvin*, 124 F.4th 1029, 1033 (7th Cir. 2024) (internal citations and quotations omitted). "On appeal, we ask whether substantial evidence supports the ALJ's conclusion that there are significant numbers of jobs in the national economy for [Plaintiff] to perform." *Ruenger v. Kijakazi*, 23 F.4th 760, 763-64 (7th Cir. 2022). The Court must conclude in this case that substantial evidence supports the ALJ's conclusion that significant numbers of jobs exist for Plaintiff to perform. As Defendant points out, Plaintiff identifies no error with respect to the other two jobs that the VE identified, which total 322,000 jobs nationally (Def. Mem. at 13-14), and neither Plaintiff nor the caselaw

11

suggests that 322,000 jobs would not constitute a "significant number." *See*, *e.g.*, *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (concluding that 140,000 jobs in the national economy was "well above the threshold for significance"); *Milhem v. Kijakazi*, 52 F.4th 688, 694-95 (7th Cir. 2022) (holding that the ALJ has "discretion to decide, using substantial evidence, when a number of jobs qualifies as significant," and that the ALJ's determination in that case that 89,000 jobs was significant was supported by substantial evidence). Therefore, the ALJ's citation to General Production Worker, DOT # 659.685-020 (SVP-2, unskilled, light, approximately 150,000 jobs in the national economy) was harmless, because in light of the numbers of jobs available even without this made-up job, the Court is "convinced that the ALJ will reach the same result" on remand. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022).

Another factor in this Court's determination was the failure of Plaintiff's counsel to ask *any* questions of the VE at the hearing. The SSA "expect[s] the [claimant's] representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing," Social Security Ruling ("SSR") 24-2p, https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-03-di-02.html#FNR4 (Jan. 6, 2025). Plaintiff "was represented at the hearing and had the opportunity to question [the VE] as to her sources and to make an objection if her answers were insufficient. Instead, she remained silent." *Schmitz v. Colvin*, 124 F.4th 1029, 1035 (7th Cir. 2024). And, on its face, the VE's testimony "gave enough detail for [the Court] to understand the sources of [her] data and the general process [she] adopted," and "did not give the ALJ any reason to suspect that [her] methodology was unreliable;" i.e., the VE's testimony was "sufficient to instill some confidence that the [jobs] estimate was not conjured out of whole cloth." *Chavez*, 96 F.4th at 1024-25 (internal quotations and citations omitted).

That said, the Court is troubled that the ALJ did not even look up the DOT numbers that he cited in his opinion. At Step Five, "ALJs often rely heavily on two sources of occupational information to determine whether the government has met its burden: the DOT *and* Vocational Experts." *Milhem*, 52 F.4th at 694 (emphasis added), quoting *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011). The Court interprets this to mean that ALJs *first* rely on the DOT, "which provides job descriptions [but] does not include data as to the number of existing positions associated with each job in the national economy," and *second*, "call upon vocational experts to testify as to how many positions exist in the national economy." *Schmitz*, 124 F.4th at 1034-35. The ALJ here seems to have skipped the first part of the Commissioner's Step Five obligation. While the ALJ's error in adopting the VE's citation to the nonexistent DOT # 659.685-020 was harmless in this case because of the 322,000 jobs available for the Hand Packer and Inspector positions, a reliance on the made-up DOT code for "General Production Worker" alone would have lacked the support of substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion to reverse and remand the ALJ's decision (D.E. 16) and grants Defendant's request for the Court to affirm (D.E. 22).

**SO ORDERED.**

                                                    ENTER:

                                                    **GABRIEL A. FUENTES**
                                                    **United States Magistrate Judge**

**DATED: March 31, 2025**